I'm next in Botta v. Colvin, 151845. Good morning, Sarah Bohr, attorney for the appellant, Grila Botta. This case has been pending, or this claim has been pending for 15 years since Ms. Botta first filed for benefits back in 2001. I take it you don't want the relief that presumably you would be entitled to under this consent decree, that would automatically entitle you to a new hearing? Yes, there's no, her main doctor has died. All the evidence, she was last insured for benefits in 2003, so there's no point in sending the case back because all the evidence there, the evidence is fully developed in the case. Well, you would presumably have an unbiased judge, ALJ. The reason for the consent decree was the two ALJ judges in this case who were being were not unbiased judges, and you agree, I think you put it in your brief, that under this consent decree you would be, you were among the members of the class that would have entitled you to a new hearing. It was an opt-in class, and while Ms. Botta was technically a member of the class, her counselor at the time did not opt in, so she did not, there's some confusion about the case, because the case was pending in federal court, in district court at the time the consent decree was issued, and we did attempt to get the government to agree to remand the case, and they declined. So we're here on the merits of the case. You didn't opt in, is that it? That's correct. It was an opt-in class. You had to opt in. You had to respond within a certain deadline, and she, there was no evidence that she had opted in within the deadline, so the case proceeded, and that's why we had to fully brief the case. So on appeal, there are two primary issues here. One is whether the ALJ mischaracterized the subjective complaints of the, of the, of her, as she testified, and mischaracterized her testimony, and whether the ALJ's reasons for discrediting the opinion of Dr. Duca, who was her former treating orthopedic surgeon, surgeon was based on flawed reasoning, and this Court discussed the need for the, the, if that is the, is the case, then that's a basis to, to reverse the ALJ's decision if it's based on flawed reasoning. It was discussed in, in the Greek case last year. The ALJ discredited Dr. Duca's opinion, in part because, who opined that repetitive leg motions would, in fact, hurt her pain, affect her pain, and she, her past relevant work was as a sewing machine operator in a bridal shop, which clearly required repetitive leg motion. So had the ALJ credited the opinion of Dr. Duca, a treating orthopedic surgeon, there's clearly she could not perform that past work. And we would ask for a payment of benefits on remand, because based upon her age, at the time, all relevant time periods, she was of closely advanced age, or an advanced age. She's illiterate in English. She only speaks Italian. And based on her lacking of transverbal skills, the medical vocational guidelines would direct a finding of disability. So what prevented that from occurring was the finding that she could go back to her past relevant work. And the ALJ never really discussed this repetitive leg motion. This would aggravate her condition. Even the, even the M.E., Dr. Lombardi, acknowledged that repetitive leg motions would irritate her radiculitis. That's in the record at pages 730 through 734. And Dr. Duca's opinion is clearly supported by the evidence of record. It's supported by the opinion of Dr. Hollis, who saw her before Dr. Duca started seeing her. And Dr. Hollis's opinion discusses an MRI. She had an MRI. It discusses that there was disc herniation in the MRI. That there was a suggestion of bilateral formal encroachment. And then suggested that she have a CT scan, which she did. And she ordered a lumbar myelogram. And those showed that she had multiple disc herniations causing neural impingement. And that this would explain her bilateral lumbar radiculopathy. So you have the, the ALJ gave a reason for discrediting the opinion. It gave three reasons. One was that the opinion was, showed almost total physical immobility. That's simply not true. Dr. Duca said she could sit for less than six hours a day. And stand for less than an hour of a day, two hours a day. That's not total physical immobility. The ALJ also claimed that there was no findings of atrophy, sensory loss, and pain distribution. And there was pain distribution, as I mentioned. The reports from Dr. Hollis confirm that. As far as the atrophy, even Dr. Duca noted that there was diminished muscle tone in the lower extremities. And there was reduced muscle testing of 4-5 in the lower extremities as well at page 116. Can you point me to where Dr. Duca rested that opinion on some of the tests? Well, he talks about the MRI in his actual, the opinion at issue, we're talking about, is contained in the record at pages one, starts at page 115 through 118. And he talks about the MRI. He mentions the MRI in this opinion. He talks about the central herniated disc at L4-5, L5-S1 disbulge with disc degeneration. He talks about the reduced limitation of range of motion on page 115. She had intermittent reticulitis in both lower extremities. So he talks about findings on examination. That's also, so she looks at objective evidence, consists of not just objective testing, but findings on examination as well as symptoms. So he finds, and he talks about diminished on page 116. She had diminished muscle tone of her lower extremities. When you say 116, what are you referring to? The page of the record, of the administrative record. 115, 116. This is the opinion that we're talking about. So this is the opinion that was asked by the state agency, requested Dr. Duca complete a report, which he did. This is back in 2001, and he completed this report. He's an orthopedic surgeon. So, and a key finding is he talks about the, on the last page of the report, or page before last, he mentions that repetitive leg foot motions aggravate her lumbar symptoms of pain and decreased range of motion. And she worked as a sewing machine operator using repetitive leg motions of her left leg to operate the sewing machine, and the vocational expert testified that if he credited that kind of an opinion, that she could not perform the past work. And once we get to past work finding, she can't perform that. As I mentioned, the medical vocational guidelines would dictate a finding of disability. She's now 69 years of age. This woman's been fighting this case since she was 54, trying to get her benefits, and she did have the misfortune of having the two ALJs that are in this case assigned to her, which I recognized when I was hired to do the appeal. I was not involved in the case until it came on appeal. So, as far as the, as I mentioned, Dr. I suppose the government would have agreed that you could, you, notwithstanding the court of reason, you didn't opt into this class that would have entitled you to a new hearing before another ALJ, assuming that the government would be reasonable on this big assumption. Would you accept that? Yes, we tried to get that. Quite, quite, lots of e-mails were exchanged trying to get this, a voluntary relief, and it was declined. So we had to brief the case. The case, if you look at the dates, was quite delayed in the briefing because I tried to get a voluntary remand. I was unsuccessful. I can't control the government's decision-making process. So we contend that the opinion of Dr. Duca was also supported by the ME who came to the hearing at the last hearing with the ALJ, Schwartz, Strauss, I mean. He said that muscle spasms are not something you can fake and that she had muscle spasms documented by Dr. Duca as well as other doctors in the record. She had positive straight leg raising tests. This case is full of objective evidence all over the place, not just Dr. Duca's finding, but all the doctors who examined her found positive abnormal findings. Even the CE, Dr. SEO, found positive objective findings, found a positive straight leg raising test. Thank you very much, Ms. Poore. You've reserved three minutes for rebuttal. Is that right? Yes. Ms. Olds. Excuse me. Good morning, Your Honors. I'll go back to the questions I asked. Judge Garifas, I believe, wrote a devastating opinion about these ALJs. And then there was this consent decree. For whatever reason, negligence, incompetence, she didn't opt in. What objection? Do you really argue that this case should be resolved in your favor on the basis of decisions made by ALJs who there is reason to question their objectivity, particularly since, with respect to Judge Feer, I hope I'm not pronouncing his name wrong, the Appeals Council ultimately said it should go to another ALJ. And then it goes to another ALJ who is in this Queen's office where there's serious, at least in the opinion that Judge Garifas wrote, there's serious reason to question whether she really had the benefit of an objective ALJ decision. What objection do you have just to remand, to a voluntary remand that she's willing to take? Well, first of all, Your Honor, I just asked the Appeals Council whether it would make sense to remand this case, and she said that it would not because her date last insured was 2003. No, no. Well, she ultimately said she would take, she would accept a remand. I'm just trying to understand, you know, I hate to, I don't hate to, but I hate to remind you that you're representing the sovereign here. I'm not a private client. And why should you object to just a remand which does not order any relief for her? Well, the reason why we did not agree to that in this case is because she was offered the opportunity to remand and she declined. She instead decided to go forward with this case. She was part of the opt-in class. The offer is back on the table, it sounds like. The offer is not. What do you mean, her offer? Her offer to opt in again, if that's possible. Respectfully, Your Honor, that's not the way the settlement worked. Everybody who was part of the class was sent a letter giving them a certain amount of time to opt in and that's what the class plaintiffs and the government agreed to with respect to the terms of the settlement. Forget about the technicalities of opt in, opt out. Why, given where we are right now, won't you agree to remand? Well, ultimately, Your Honor, the reason that we wouldn't agree to remand here is because there is no evidence in this decision of bias on the part of the ALJ and particularly the district court didn't find that, that there was any bias. Well, bias is a hard thing to find in an isolated case, but bias was essentially found by Judge Garifas. I could be wrong, but I believe that's what ultimately led to the class action. For whatever reason, incompetence, negligence, she didn't opt, she didn't take advantage of that, but she's now willing to take, to accept that relief. I'm just trying to understand why you wouldn't agree to it, because it's not giving her anything more than a hearing before someone who is clearly, one would say, is not tainted in the way these particular ALJs were. With respect to Your Honor, that settlement notwithstanding, in this case, ALJ Straus' opinion is supported by substantial evidence in the record, which is the standard. The government won on this case on the merits, and believes that ALJ Straus came to the right conclusion, that her decision is supported by substantial evidence, and does not warrant remand. Remand is not warranted in this particular case. There is no evidence of bias. The court is allowed to review the record as a whole,  and here, the decision is clearly supported by substantial evidence. Why don't you address the merits? I will. So, the ALJ found that Dr. Duca's opinion was not entitled to controlling weight. And as is well settled, just the fact that a physician is a treating physician does not automatically entitle the opinion of that physician to controlling weight. And in fact, the appellant does not challenge the weight of any of the other treating physicians that was accorded by the ALJ in this case, but only the opinion of Dr. Duca. And as Your Honor pointed out, while the appellant was speaking, there are some issues with Dr. Duca's records. And the ALJ highlighted that. There are actually two issues with them. The first is that his treatment notes do not note any objective tests or objective findings. They just note, for the most part, plaintiff's assertions of pain. They're restatements of what the plaintiff is asserting. And then a continuing notation of decreased range of motion. An argument that your adversary makes that that's not always necessarily included in the doctor's records. Well, we have only what we have in front of us with respect to what Dr. Duca did. And so Dr. Duca noted the plaintiff's subjective complaints of pain and that's pretty much it. And in fact, the appellant says in her brief, particularly on page 52, footnote 19, that Dr. Duca's notes, his notes from the record, page 126 through 125, cannot be relied upon because they contain conclusory findings and in addition are letters to the workers' compensation board which uses a different standard to determine whether somebody is able to work or not and says that she is not relying on them and that they are not to be relied upon. So that's the first group of Dr. Duca's records. Why rely on them for what they're worth just because they're sent to the workers' compensation board doesn't mean you can't rely on them in Social Security. Well, the reason why we rely on them is because the appellant says that they contain conclusory findings and the ALJ also noted that that they're written with an eye to a workers' compensation board and in addition that they contain basically restatements of the plaintiff's complaints of pain as opposed to any sort of objective test and particularly the ALJ also relied on the review of those records by board-certified orthopedic surgeon Dr. Lombardi who testified at the 2008 hearing and he testified also that he would not agree with Dr. Duke's opinion because it's not supported by objective tests and instead it's unclear incomplete with respect to muscle atrophy weakness sensory mapping important important What your adversary says is that   in the reports provided by the independent medical examiner and I guess Dr. Seale of some atrophy Not necessarily in the reports provided by the independent medical examiner not necessarily atrophy Dr. Seale found that a straight leg raising test was positive but Dr. Seale's overall opinion with respect to functionality was that the plaintiff that her daily activities were somewhat limited and she was slightly limited with respect to sitting, standing bending, lifting and carrying heavy objects so any assertion that Dr. Seale agreed with Dr. Duke's opinion after his explanation and the ALJ relied on Dr. Seale's opinion in addition to the opinions of Dr. Cohen and Dr. Lombardi who testified at plaintiff's hearings and particularly Dr. Cohen mentioned the MRI which he said showed everyone pretty much agrees that it shows minimum compression of the anterior thecal sac which is not clinically sufficient to support a finding that the plaintiff is completely disabled and disagreed with Dr. Duke's opinion so accordingly the ALJ accorded appropriate weight to Dr. Duke's opinion and applied the factors that she was required to apply in assessing the weight that was appropriate for Dr. Duke I ask you separate and apart from these arguments that were made how can the failure opt into this class action how could we affirm when these findings are essentially made by a judge whose impartiality in these cases is suspect respectfully your honor the government takes a different position regardless of a separate lawsuit that was filed the ALJ and also the district court looked at this particular case and the evidence supporting ALJ Strauss's decision and found that it was supported by substantial evidence and the government takes the same position that regardless of a separate case where there was an issue of bias and a settlement that here ALJ Strauss in a 19 page detailed decision after considering the expert testimony of board certified surgeon and a separate medical expert and two separate consultative exams found that the plaintiff was able to return to her prior work substantial evidence and I don't know the answer or maybe I did and I just forgotten but was there any argument about bias before the district court was actually your honor the plaintiff requested permission to take discovery concerning bias and judge denied that request. Thank you very much Ms. Board. You have three minutes. When you look at a treating physician the standard is whether the other evidence is not inconsistent. It doesn't have to be consistent. While Dr. Seale may have had an opinion that her functionality was limited this court held clearly in the decision that such a nebulous statement is worthless. Look at his findings on page 147. This is Dr. Seale finding significant limitation of range of motion positive straight leg raising tests diminished sensation of the left at the level 4-5 S1. Remember she uses her sewing machine with her left leg. Dr. Seale's report is not inconsistent with radiating pain to her left leg which affects her ability to perform her past tests. Dr. Seale's report is not inconsistent with Dr. Duca's report. Dr. Cohen did not discuss the evidence of record and was not aware of the fact when you have an MRI you have a report of an MRI. In this case Dr. Duca did not discuss the you have an MRI. In this